❏ Original       ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>cellular telephone number (414) 949-3993 (Target Cell<br>Phone), service provider is T-Mobile, 4 Sylvan Way,<br>Parsippany, NJ 07054; See Attachments | )<br>)<br>)<br>)<br>)<br>)   Case No.24-842M(NJ)<br><br>**Matter No.: 2024R00097** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 4/9/2024 _____ *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.     xx❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Nancy Joseph _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*    ☑ until, the facts justifying, the later specific date of _____ 9/23/2024 _____ .

Date and time issued:3/27/2024 @ 2:57 p.m. _____

*Judge's signature*

City and state:     Milwaukee, Wisconsin _____      Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

                                              _____
                                                      *Executing officer's signature*

                                              _____
                                                        *Printed name and title*

# ATTACHMENT A

## Property to Be Searched

1.  Records and information associated with the cellular device assigned call number **(414) 949-3993**, (referred to herein and in Attachment B as **"Target Cell Phone"**), with no listed subscriber that is in the custody or control of T-Mobile, (referred to herein and in Attachment B as the "Provider"). T-Mobile is a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2.  **Target Cell Phone.**

**Particular Things to be Seized**

**I.    Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.    The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** from the time period commencing on **January 1, 2024:**

i.    Names (including subscriber names, usernames, and screen names);

ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii.    Local and long-distance telephone connection records;

iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v.    Length of service (including start date) and types of service utilized;

vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cell Phone,** including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT"), and Network Event Location Operating System information (NELOS).

b. Information associated with each communication to and from the **Target Cell Phone** for a period of up to 30 DAYs from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

12

  ii. Source and destination telephone numbers;

  iii. Date, time, and duration of communication; and

  iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phones will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT"), and Network Event Location Operating System information.

c. Information about the location of the **Target Cell Phone** for a period of 30 DAYS, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, including Network Event Location Operating System information.

  i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of **Target Cell Phone**, on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by

13

the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846, involving Nancy and Jackie GARCIA.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

14

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>cellular telephone number (414) 949-3993 (Target Cell<br>Phone), service provider is T-Mobile, 4 Sylvan Way,<br>Parsippany, NJ 07054; See Attachments | )<br>)<br>)<br>)<br>)<br>) |

Case No. 24-842M(NJ)

**Matter No.: 2024R00097**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 and 846 | Manufacture, distribute, possess or dispense a controlled substance; conspiracy; |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of __180__ days *(give exact ending date if more than 30 days:* __9/23/2024__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JARROD MAGUIRE
Digitally signed by JARROD MAGUIRE
Date: 2024.03.26 15:14:02 -05'00'

*Applicant's signature*

SA Jarrod C. Maguire, DEA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone
*(specify reliable electronic means)*.

Date: __3/27/2024__

*Judge's signature*

City and state: __Milwaukee, Wisconsin__        Hon. Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

I, Jarrod Maguire, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) (1) (A) for information about the location of the cellular telephone assigned cell number **(414) 949-3993 ("Target Cell Phone")**, whose cell phone provider is T-Mobile, a wireless provider headquartered at 4 Sylvan Way, Parsippany, New Jersey.  The **Target Cell Phone** is described herein, and in Attachment A, and the location information to be seized is described herein, and in Attachment B.

2.      I have been employed as a Special Agent with the Drug Enforcement Administration ("DEA") since June 2022 I am currently assigned to the DEA Milwaukee District Office. As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking and money laundering offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Section 2, and United States Code, Sections 841, 843, and 846.  I have been involved in electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

3.      Prior to my employment with the DEA, I was a Police Officer for the San Diego Police Department from November 2017 to February 2022. Over the course of my career, I have assisted with over 100 arrests for possession of controlled substances, being under the

1

influence of a controlled substance, and for possession of drug paraphernalia, and driving under the influence. More specifically, my training and experience includes the following:

a. I performed arrests, investigated crimes, and interacted with the community in which I served. I seized firearms, contraband, narcotics and identified applicable and enforceable laws. I wrote crime reports, collected evidence, analyzed data and conducted background checks pertaining to investigations. I conducted specialized plain clothes operations and surveillance for ongoing investigations and court cases. I conducted investigative vehicle stops, search warrants and pedestrian stops. I assisted in matters related to homicide, child abuse, and narcotics with many aspects of the investigation.

4. I have participated in complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. More specifically, my training and experience includes the following:

a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b. I have experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

c. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

d. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

2

e. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

f. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

g. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

h. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846, and Title 18, United States Code, Sections 1956 and 1957, have been committed, are being committed, and will be committed by the identified user of **(414) 949-3993 (Target Cell Phone)** and others not yet identified. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

3

**PROBABLE CAUSE**

7.      Since February 2024, case agents[1] have been investigating the drug trafficking activities of Joel GONZALEZ and others. Based on information from a Source of Information (SOI), case agents identified the GONZALEZ DTO as an organization that distributes pounds of methamphetamine from Mexico to Milwaukee, Wisconsin.

8.      In February and March of 2024, Milwaukee DEA Agents conducted debriefings with a Source of Information (SOI). The SOI stated that Joel GONZALEZ, a/k/a "Jojo," an inmate at Racine Correctional Institution (RCI), has been trafficking ounces of methamphetamine into RCI by unknown means. According to the SOI, GONZALEZ claimed to have access to pounds of methamphetamine in Milwaukee, Wisconsin. The SOI further stated that GONZALEZ uses his girlfriend, Jackie GARCIA, and her sister, Nancy GARCIA, as the contact and distributor outside of RCI. The SOI stated they would be able to arrange an introduction of an undercover (UC) law enforcement officer to buy methamphetamine from the GARCIA sisters. Additionally, GONZALEZ sells approximately two to four ounces of methamphetamine for $300 an ounce. The SOI explained Jackie GARCIA and Nancy GARCIA live together and that they keep large amounts of methamphetamine on hand. GONZALEZ further related to the SOI that the GARCIA sisters receive three to four "bricks" (i.e., a pound) of methamphetamine at a time for $3,000 per "brick" from the cartel. The "bricks" are delivered via semi-trucks to the Milwaukee area with an unknown frequency. The SOI was informed that Nancy GARCIA, was hiding the methamphetamine on the south side

---

[1] Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

of Milwaukee. A check with law enforcement data bases revealed that both GARCIA sisters' have a listed address of 1115 S. 19th Street, Milwaukee, Wisconsin.

9.      Case agents believe the SOI's information to be credible and reliable for the following reasons: SOI has given case agents detailed information and corroborated information concerning individuals involved in drug trafficking, which case agents have independently verified; SOI has provided information to agents, which directly led to the seizure of ounce quantities of narcotics; SOI has provided information against the SOI's penal interest in that the SOI admitted his/her involvement in drug trafficking activities in the past; and SOI is cooperating with case agents in hope of favorable consideration regarding pending state charges.

10.     Case agents received information regarding GONZALEZ from a Racine Correction Institution investigative specialist which included call logs and sign in sheets. A review of these documents revealed that **(414) 949-3993 (Target Cell Phone)** is listed on Jackie GARCIA's RCI visitor profile. On February 16, 2024, case agents sent an administrative subpoena to T-Mobile, requesting subscriber information as well as call detail records for **(414) 949-3993 (Target Cell Phone)**. T-Mobile responded that **(414) 949-3993 (Target Cell Phone)** is a pre-paid phone with no subscriber information. A review of T-Mobile records revealed that the **Target Cell Phone** was activated on December 15, 2023. Analysis of the call detail records revealed a contact in common between **(414) 949-3993 (Target Cell Phone)** and (262) 800-9330, which is the telephone number for RCI.

11.     In March 2024, DEA Milwaukee case agents directed the SOI to arrange a controlled purchase through Joel GONZALEZ.  GONZALEZ provided the SOI with Jackie GARCIA's phone number **(414) 949-3993 (Target Cell Phone)** to facilitate and deliver the

5

agreed upon amount of methamphetamine. On March 7, 2024, DEA Milwaukee case agents conducted a controlled purchase of 159.6 gross grams of suspected methamphetamine for $1,200 from Jackie GARCIA utilizing an undercover (UC) Task Force Officer, at 1114 S. 25th Street, Milwaukee, Wisconsin. Law enforcement officers observed Jackie GARCIA driving a red Ford Focus with Wisconsin registration ALY-4769 (Subject Vehicle) during the transaction. According to the Wisconsin Department of Transportation the Ford Focus, bearing Wisconsin plate ALY-4769, is registered to Rebecca Lopez with an address of 1115 S. 19th, Milwaukee, Wisconsin.

12.     During the initial planning for the controlled purchase of methamphetamine, Jackie GARCIA sent the location of the transaction through text, using **(414) 949-3993 (Target Cell Phone)** for S. 25th Street and Scott Street. Shortly thereafter, GARCIA changed the meeting location to S. 73rd Street and Walker Street (where law enforcement authorities observed GARCIA park the Subject Vehicle after the purchase). During that time, the UC received text and phone calls from an unknown female using a different phone number (believed to be Nancy GARCIA) coordinating the location of the transaction. The female explained to the UC through a phone call that "she" did not want the person selling the methamphetamine (later identified as Jackie GARCIA) to drive from S. 25th and Scott Street to 73rd and Walker Street with the methamphetamine. The location of the transaction was ultimately established as 1114 S. 25th Street, Milwaukee, Wisconsin.  Case agents are aware that this location is in close proximity to 1115 S. 19th Street, Milwaukee, Wisconsin. Throughout the controlled narcotics transaction, Jackie GARCIA used (**414) 949-3993 (Target Cell Phone)** to communicate and coordinate via text with the UC.

6

13.    Based on SOI's information, physical surveillance, and the controlled purchase, I believe that Jackie GARCIA is using **(414) 949-3993 (Target Cell Phone)** to communicate with others to further her drug trafficking activities. Case agents believe the location information will assist in identifying her source(s) of supply, stash locations used by Jackie GARCIA, and other co-conspirators involved in his drug trafficking organization.

14.    In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

15.    Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of **(414) 391-5369 (Target Cell Phone)**, including by initiating

7

a signal to determine the location of **(414) 391-5369 (Target Cell Phone)** on T-Mobile's network or with such other reference points as may be reasonably available.

16.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the **(414) 391-5369 (Target Cell Phone)**.

## AUTHORIZATION REQUEST

17.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

18.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrants has been completed.  There is reasonable cause to believe that providing immediate notification of the warrants may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the **(414) 949-3993 (Target Cell Phone)** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  See 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  See 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  See 18 U.S.C. § 3103a(b)(2).

19.     I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-

Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of **(414) 949-3993 (Target Cell Phone)** on T-Mobile network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

20.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **(414) 949-3993 (Target Cell Phone)** outside of daytime hours.

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned call number **(414) 949-3993**, (referred to herein and in Attachment B as **"Target Cell Phone"**), with no listed subscriber that is in the custody or control of T-Mobile, (referred to herein and in Attachment B as the "Provider"). T-Mobile is a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2. **Target Cell Phone.**

**Particular Things to be Seized**

**I.     Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.   The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** from the time period commencing on **January 1, 2024:**

        i.    Names (including subscriber names, usernames, and screen names);

        ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long-distance telephone connection records;

        iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.    Length of service (including start date) and types of service utilized;

        vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cell Phone,** including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

 (B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT"), and Network Event Location Operating System information (NELOS).

b. Information associated with each communication to and from the **Target Cell Phone** for a period of up to 30 DAYs from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

12

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phones will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT"), and Network Event Location Operating System information.

c. Information about the location of the **Target Cell Phone** for a period of 30 DAYS, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, including Network Event Location Operating System information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of **Target Cell Phone**, on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by

13

the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii.  This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.  Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846, involving Nancy and Jackie GARCIA.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

14

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE
## 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct. I am employed by _____**.**

,and my title is _____. I am qualified to authenticate the records

attached hereto because I am familiar with how the records were created, managed, stored, and

retrieved. I state that the records attached hereto are true duplicates of the original records in the

custody of **_____.** The attached records consist of _____

**[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

     a.    all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth by, or from information transmitted by, a person with knowledge

of those matters, they were kept in the ordinary course of the regularly conducted business activity

of _____ and they were made by _____ as a regular

practice; and

     b.    such records were generated by _____electronic

process or system that produces an accurate result, to wit:

     1.    the records were copied from electronic device(s), storage medium(s), or file(s) in

the custody of _____ in a manner to ensure that they are

true duplicates of the original records; and

2.      the process or system is regularly verified by _____ and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                          Signature